IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CHICAGO TRUCK DRIVERS, HELPERS AND WAREHOUSE WORKERS UNION (INDEPENDENT) PENSION FUND, and JACK STEWART, trustee,<br><br>Plaintiffs,<br><br>v.<br><br>LOYAL CASKET COMPANY, an Illinois Corporation,<br><br>Defendant. | Civil Action No.: 06 C 5987<br><br>Suzanne B. Conlon, Judge |

## **MEMORANDUM OPINION AND ORDER**

The Chicago Truck Drivers, Helpers and Warehouse Union (Independent) Pension Fund and its Trustee, Jack Stewart (collectively "the Fund"), sue the Loyal Casket Company ("Loyal") to collect withdrawal liability payments allegedly due under the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended by the Multiemployer Pension Plan Amendments Act of 1980 ("MPPAA"), 29 U.S.C. §1001 *et seq.* The parties cross-move for summary judgment. For the reasons set forth below, the Fund's motion for summary judgment is granted, and Loyal's cross-motion is denied.

## I. SUMMARY JUDGMENT STANDARD

On cross-motions for summary judgment, each movant must satisfy Fed. R. Civ. P. 56's requirements. *Cont'l Cas. Co. v. Northwestern Nat'l Ins. Co.*, 427 F.3d 1038, 1041 (7th Cir. 2005). Summary judgment is proper "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.

R. Civ. P. 56(c); *Adelman-Reyes v. Saint Xavier Univ.*, 500 F.3d 662, 665 (7th Cir. 2007). A genuine issue of material fact exists for trial when, in viewing the record and all reasonable inferences in a light most favorable to the non-moving party, a reasonable jury could return a verdict for the non-movant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, (1986); *Hedberg v. Indiana Bell Tel. Co.*, 47 F.3d 928, 931 (7th Cir. 1995). Each movant has the burden of establishing there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If a movant satisfies this burden, the non-movant must set forth specific facts supported by admissible evidence that establish a genuine issue for trial. Fed. R. Civ. P. 56(e); *Celotex*, 477 U.S. at 324; *Batish v. Cook County*, 241 F.3d 919, 926 (7th Cir. 2001).

## II.    UNCONTESTED FACTS

The Chicago Truck Drivers, Helpers and Warehouse Union (Independent) Pension Fund is a multi-employer pension plan within the meaning of ERISA, 29 U.S.C. §§1002(37), 1301(a)(3). Pls. Facts ¶ 5. Loyal is a casket manufacturing company located in Chicago. Def. Facts ¶ 3. Loyal executed a collective bargaining agreement ("CBA") with the Chicago Truck Drivers, Helpers and Warehouse Workers' Union (Independent); Loyal agreed to make contributions on behalf of employees who performed work covered under the CBA. Pls. Facts ¶ 11.

The Fund determined that on or about May 1, 2006, Loyal permanently ceased having a contribution obligation to the Fund, effecting a "complete withdrawal" from the Fund under 29 U.S.C. §1383. *Id.* ¶ 12. On June 15, 2006, the Fund sent Loyal a letter stating the company incurred an estimated withdrawal liability of $163,144.40, and attached a payment schedule notifying Loyal that it was required to pay that amount in either a lump sum or in eighty quarterly

2

installments of $2808.00 commencing July 1, 2006. *Id.* ¶ 14. The letter noted that it was issued in accordance with ERISA §§4202(2) and 4219(b)(1), 29 U.S.C. §§1382(2) and 1399(b)(1). Loyal's registered agent received the June 15, 2006 letter no later than June 23, 2006. *Id.* ¶ 16.

On August 31, 2006, the Fund sent a second letter advising that Loyal's July 1, 2006 withdrawal liability payment was past due pursuant to ERISA §4219(C)(5)(A), 29 U.S.C. §1399(c)(5)(A). *Id.* ¶ 18. The letter warned that if Loyal failed to make payment within 60 days, the Fund would accelerate the debt and seek the outstanding withdrawal liability balance plus interest. Pls. Facts Ex. 2D. Loyal's registered agent received the letter no later than September 8, 2006. Pls. Facts ¶ 19.

A third letter was sent on October 12, 2006, explaining that the Fund recalculated Loyal's withdrawal liability to $149,643.50. The letter also explained that the payment schedule, amounts owed, and payment dates detailed in the June 15 letter remained unchanged. *Id.* ¶ 22. Additionally, the letter indicated two scheduled payments remained past due, and reiterated the consequences of failing to pay withdrawal liability. Pls. Facts Ex. 2F. Loyal's registered agent received the October 12 letter no later than October 20, 2006. Pls. Facts ¶ 24.

Loyal has not made any withdrawal liability payments to the Fund. Nor has Loyal ever requested a review of the Fund's withdrawal liability assessment under ERISA §4219(b)(2)(A), 29 U.S.C. §1399(b)(2)(A).

The Fund filed this lawsuit on November 2, 2006. Following the Fund's filing of this case, Loyal filed an arbitration demand on December 8, 2006 to contest the Fund's withdrawal liability assessment.

**III.  DISCUSSION**

## A. ERISA Withdrawal Liability

Under ERISA and the MPPAA, an employer that ceases to contribute to a multi-employer pension plan remains liable for its share of vested, unfunded benefits. 29 U.S.C. §§ 1381(a), 1383; *Central States, Southeast and Southwest Areas Pension Fund v. Schilli Corp.*, 420 F.3d 663, 667 (7th Cir. 2005). This protects other employers in the plan from having to pay for those benefits. *Id.* (citing *Central States, Southeast & Southwest Areas Pension Fund v. Slotky*, 956 F.2d 1369, 1371 (7th Cir. 1992).

When an employer withdraws, the plan must determine the amount owed by the employer, notify the employer of the withdrawal liability amount and payment schedule, and demand payment. 29 U.S.C. §§1382, 1399(b)(1). The employer may request that the plan review its liability determination within 90 days of the notice. 29 U.S.C. §1399(b)(2)(A). The plan must respond to the employer's request and provide the basis for its decision. 29 U.S.C. § 1399(b)(2)(B). If the employer disputes the plan's determination, it may initiate arbitration within 60 days after the earlier of the plan's response to the complaint, or 120 days after the employer requests additional information from the plan regarding the assessment. 29 U.S.C. § 1401. All disputes between the employer and the pension fund concerning this determination must be resolved through arbitration. 29 U.S.C. § 1401(a)(1). If the employer fails to initiate arbitration by the statutory deadline, the amount demanded by the pension fund is deemed to be due and owing, and the plan may sue to collect on the schedule set forth by the plan sponsor. 29 U.S.C. § 1401(b)(1); *Slotky*, 956 F.2d at 1371-72.

## B. The Parties' Summary Judgment Motions

ERISA provides that withdrawal liability is due and owing to a multi-employer pension plan when an employer is notified of its assessed liability but fails to timely request review of the assessment or initiate arbitration. 29 U.S.C. §§1399(b)(1)-(2), 1401(a)(1), (b)(1); *Robbins v. Admiral Merchants Motor Freight, Inc.*, 846 F.2d 1054, 1056-57 (7th Cir. 1988); *Chicago Truck Drivers, Helpers and Warehouse Workers Union (Independent) Pension Fund v. El Paso CGP Co., et al.*, No. 04 C 7872, 2006 WL 1037152, at *4 (N.D. Ill. Apr. 17, 2006) (Coar, J.). To decide the parties' summary judgment motions, the court must determine (1) when the Fund gave Loyal notice of its withdrawal liability; and (2) whether Loyal failed to timely request review or initiate arbitration after the Fund's notice.

### 1. *The Fund's Notice*

The parties dispute when Loyal received notice of its withdrawal liability under 29 U.S.C. §1399(b)(1). Section 1399(b)(1) provides:

> As soon as practicable after an employer's complete or partial withdrawal, the plan sponsor shall –
>
> (A) notify the employer of –
>
> > (i) the amount of the liability, and
> > (ii) the schedule for liability payments, and
>
> (B) demand payment in accordance with the schedule.

The Fund insists that notice was given in its June 15 letter, by: (1) stating Loyal incurred an estimated withdrawal liability of $163,144.40; (2) attaching a payment schedule commencing July 1, 2006; and (3) demanding payment in accordance with the schedule. Pl. Facts Ex. 2A. Loyal responds that sufficient notice was not given until the Fund's October 12 letter, which stated Loyal's withdrawal liability was recalculated to $149,643.50. *Id.* at Ex. 2F..

5

Loyal argues the June 15 letter was insufficient to meet § 1399(b)(1)'s requirements because it only provided an *estimate* of Loyal's withdrawal liability. This conclusory argument is unpersuasive. Although no court has squarely addressed the issue, it is recognized that under §1399(b)(1), a withdrawal liability estimate is sufficient to meet the statute's notice requirement. *See Trustees of the Chicago Truck Drivers, Helpers and Warehouse Workers Union (Independent) Pension Fund v. Central Transport, Inc.*, 888 F.2d 1161, 1163-64 (7th Cir. 1989); *see generally Nat'l Pension Plan of the Unite Here Works Pension Fund v. Westchester Lace & Textiles, Inc.*, No. 05 C 6138, 2006 WL 2051107, at *2, 6 (S.D.N.Y. July 21, 2006) (recognizing that demand letter with liability estimate undisputably gave notice); *New York State Teamsters Conference Pension and Retirement Fund v. Parlor City Contracting Co., Inc.*, No. 96 C 362, 1997 WL 778677, at *1, 3 (S.D.N.Y. Dec. 8, 1997) (estimated withdrawal liability letter sufficiently gave notice of liability). Indeed, notice "substantially complying" with § 1399(b)(1) – even a bankruptcy proof of claim – has been ruled sufficient. *See, e.g., Central States, Southeast and Southwest Areas Pension Fund v. Basic Am. Inds., Inc.*, 252 F.3d 911, 918 (7th Cir. 2001) (citation omitted). Here, there is no dispute the Fund's June 15 letter substantially complied with §1399(b)(1)'s requirements, as it demanded a liability amount and attached a payment schedule.

Loyal also argues it would be "nonsensical" to find that the June 15 letter constituted sufficient notice because the Fund seeks recovery of the *actual* liability amount included in its October 12 letter. This argument mischaracterizes the issue. The relevant issue is when Loyal received notice that the Fund demanded withdrawal liability, not whether the withdrawal liability amount was correct when Loyal first received the payment demand. There is no dispute that the

6

Fund demanded withdrawal liability payments in its June 15 letter. By doing so, the Fund triggered Loyal's duties to make payments or to request review of the assessment.

Loyal's alternative argument that the October 12 letter "must" be a 1399(b)(1) notice because it was sent "in accordance with ERISA Sec. 4219, 29 U.S.C. 1399" is inconsequential. Indeed, the June 15 letter contained precisely the same language. The June 15 letter unequivocally notified Loyal of its withdrawal from the fund, its estimated liability, and that payments were due beginning July 1, 2006. In contrast, the October 12 letter lacked key ingredients found in a § 1399(b)(1) notice. Though the latter letter provided a recalculated liability amount, it did not notify Loyal of its withdrawal, nor did it include a *new* schedule or make a *new* demand for payment.

Finally, Loyal has waived its ability to contest the sufficiency of the June 15 letter because it failed to timely submit the issue to arbitration within 90 days of the letter. *See Trustees of the Chicago Truck Drivers, Helpers and Warehouse Workers Union (Independent) Pension Fund v. Central Transport, Inc.*, 935 F.2d 114, 118 (7th Cir. 1991) (withdrawal liability computation is question for arbitrator); *Central States, Southeast and Southwest Areas Pension Fund v. XTL Transport, Inc.*, No. 95 C 918, 1996 WL 296649, at *14 (N.D. Ill. June 3, 1996) (Conlon, J.) (insufficient notice argument waived because it was not raised during arbitration). Indeed, if Loyal had any dispute with respect to the contents of the June 15 letter, it was required to arbitrate the dispute. 29 U.S.C. § 1401(a)(1) ("Any dispute between an employer and the plan sponsor of a multiemployer plan concerning a determination made under sections 1381 through 1399 of this title shall be resolved through arbitration"); *Slotky*, 956 F.2d at 1371; *Banner Indus., Inc. v. Central States, Southeast and Southwest Areas Pension Fund*, 875 F.2d 1285, 1294 (7th

Cir. 1989) ("The MPPAA requires an employer to arbitrate any challenges to its withdrawal liability"). Although Loyal insists that the Fund engaged in gamesmanship by sending an estimated liability in its June 15 letter, it only begs the question as to why Loyal refrained from responding to the letter. Loyal failed to comply with ERISA's simple commands to timely assert its arbitration rights. *See, e.g., Central States, Southeast and Southwest Areas Pension Fund v. Boise Cascade Corp.*, No. 93 C 6603, 1994 WL 585713, at *3 (N.D. Ill. Oct. 19, 1994) (Williams, J.). By failing to respond to the June 15 letter, Loyal waived its opportunity to contest its propriety. Accordingly, for this reason and the reasons stated above, all reasonable inferences support the conclusion that the June 15 letter constituted sufficient notice under §1399(b)(1).

### 2. *Timeliness of Loyal's Arbitration Demand*

Having established that Loyal received notice of its withdrawal liability assessment no later than June 23, 2006 (when Loyal recieved the June 15 letter), Loyal was required to initiate the review/arbitration procedure within 90 days of that date (around late September). §§1399(b)(2)(A), 1401(a), 1401(b)(1); *El Paso CGP Co.*, 2006 WL 1037152, at *7. It is undisputed, however, that Loyal never requested any review of the Fund's liability assessment. Pls. Facts ¶¶ 25-28. By failing to timely initiate arbitration, Loyal waived potential defenses to the Fund's withdrawal liability assessment, and the amounts owed to the Fund became due. § 1401(b)(1); *Robbins v. Chipman Trucking, Inc.*, 866 F.2d 899, 900 (7th Cir. 1988) (due to failure to timely initiate arbitration, defendant waived right to contest withdrawal liability); *El Paso CGP Co.*, 2006 WL 1037152, at *7, 8.

Loyal argues that it timely initiated arbitration for two deficient reasons. First, it contends the October 12 letter was the Fund's real §1399(b)(1) notice, rendering Loyal's arbitration

8

demand timely. However, the Fund's June 15 letter was the operative §1399(b)(1) notice.

Second, Loyal asserts if the October 12 letter is not construed as a §1399(b)(1) notice, it *must* be construed as a §1399(b)(2)(B) notice because it was "sent in accordance with [§1399]." A §1399(b)(2)(B) notice is a plan sponsor's response to an employer's review request.[1] *Boise Cascade Corp.*, 1994 WL 585713, at *3 ("Section 1399(b)(2)(B) describes the pension fund's duty following an employer's request for review"). It is undisputed Loyal never requested the Fund to review any matter. Loyal argues the Fund conducted a "self-review" before furnishing a §1399(b)(2)(B) notice in the form of the October 12 letter. This argument is undercut by the statutory language, which contemplates that a § 1399(b)(2)(B) notice must be preceded by a review request raised by an employer. *See* 29 U.S.C. § 1399(b)(2)(B) ("[a]fter a reasonable review of *any matter raised*, the plan sponsor shall notify the employer. . .") (emphasis added). Accordingly, the October 12 letter was not a §1399(b)(2)(B) notice.

### 3. *Accelerated Liability and Interest, Statutory Damages, and Fees*

---

[1] 29 U.S.C. §1399(b)(2)(A)-(B) provides:

(2)(A) No later than 90 days after the employer receives the notice described in paragraph (1), the employer--
    (i) may ask the plan sponsor to review any specific matter relating to the determination of the employer's liability and the schedule of payments,
    (ii) may identify any inaccuracy in the determination of the amount of the unfunded vested benefits allocable to the employer, and
    (iii) may furnish any additional relevant information to the plan sponsor.
(B) After a reasonable review of any matter raised, the plan sponsor shall notify the employer of--
    (i) the plan sponsor's decision,
    (ii) the basis for the decision, and
    (iii) the reason for any change in the determination of the employer's liability or schedule of liability payments.

9

Due to Loyal's failure to timely initiate arbitration, Loyal's withdrawal liability became due and owing on the schedule set forth by the Fund. 29 U.S.C. §1401(b)(1). Consequently, the Fund argues it is entitled to accelerate the *entire* liability amount because Loyal defaulted on its payment obligations. *See* § 1399(c)(5);[2] *see Basic Am. Indus.*, 252 F.2d at 918 (the MPPAA "does not prevent the fund from accelerating all future payments upon default, thus making all the installments due at once"); *Chicago Truck Drivers, Helpers and Warehouse Union (Independent) Pension v. Century Motor Freight, Inc.*, 125 F.3d 526, 533 (7th Cir. 1997) (deciding a pension fund's right to an accelerated payment upon employer's default and failure to initiate arbitration). It is undisputed that Loyal defaulted on its payment obligations by failing to cure its non-payment within the time allotted under § 1399(c)(5)(A) (60-days after its August 31, 2006 "past due" letter). Pls. Facts ¶ 21. Loyal is in default within the meaning of §1399(c)(5)(A), and the Fund is entitled to the outstanding withdrawal liability amount. *Century Motor Freight*, 125 F.3d at 533; *Bowers v. Transportacion Maritima Mexicana, S.A.*, 901 F.2d 258, 265 (2d Cir. 1990). The Fund is also entitled to interest on the unpaid contributions, liquidated damages, and reasonable attorney's fees and costs. *See* 29 U.S.C. § 1132(g)(2); *Slotky*,

---

[2]29 U.S.C. §1399(c)(5) provides:

(5) In the event of a default, a plan sponsor may require immediate payment of the outstanding amount of an employer's withdrawal liability, plus accrued interest on the total outstanding liability from the due date of the first payment which was not timely made. For purposes of this section, the term "default" means--
    (A) the failure of an employer to make, when due, any payment under this section, if the failure is not cured within 60 days after the employer receives written notification from the plan sponsor of such failure, and
    (B) any other event defined in rules adopted by the plan which indicates a substantial likelihood that an employer will be unable to pay its withdrawal liability.

956 F.2d at 1377 (declaring that interest, liquidated damages, and attorney's fees are "mandatory add-ons" in successful suits to enforce the MPPAA).

## IV. CONCLUSION

For the reasons set forth above, the Fund's motion for summary judgment is granted, and Loyal's cross-motion is denied. Summary judgment is entered for plaintiffs Chicago Truck Drivers, Helpers and Warehouse Workers Union (Independent) Pension Fund and Jack Stewart, and against defendant Loyal Casket Company on the issue of liability.

ENTER:

April 7, 2008

Suzanne B. Conlon
United States District Judge